# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COOKEVILLE DIVISION

| | | |
|---|---|---|
| **RANDY DWAYNE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-cv-0078** |
| **v.** | ) | **Judge Nixon / Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his applications for DIB and SSI on September 28, 2005,

alleging that he had been disabled since May 31, 2001, due to hepatitis C, seizures, and chemical addiction. Docket No. 12, Attachment ("TR"), TR 10, 57, 64, 70, 75.[1] Plaintiff's applications were denied both initially (TR 21, 60) and upon reconsideration (TR 20, 55).[2] Plaintiff subsequently requested (TR 53) and received (TR 29) a hearing. Plaintiff's hearing was conducted on November 10, 2008, by Administrative Law Judge ("ALJ") Denise Pasvantis. TR 388. Plaintiff and vocational expert ("VE"), Jane Hall, appeared and testified. *Id.*

On December 29, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 10-19. Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since May 31, 2001, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following combination of severe impairments: hepatitis C infection; history of substance abuse, continued treatment with Methadone; bipolar disorder; anxiety disorder, not otherwise specified; and obsessive-compulsive disorder (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

_____

[1] It does not appear that the record before this Court contains a copy of Plaintiff's application for SSI. There does not, however, appear to be any dispute over the fact that Plaintiff did, in fact, protectively file an application for SSI on September 28, 2005, alleging that he had been disabled since May 31, 2001, due to hepatitis C, seizures, and chemical addiction.

[2] While the record does not contain a copy of Plaintiff's application for SSI, it does, however, contain the letter relaying the SSA's initial denial of that claim. *See* TR 60. The record does not appear to contain the SSA's reconsideration denial of that claim, but again, there does not appear to be any dispute over the fact that Plaintiff's SSI claim was denied upon reconsideration as well.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to work that requires no more than occasional interaction with the public. He is able to understand, remember and carry out simple and detailed tasks; able to sustain concentration and persistence for two hours [*sic*] segments; and able to set short-term goals.

6. The claimant is capable of performing past relevant work as a laborer and a machine operator, car parts manufacturer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2001, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 12-19.

On December 26, 2008,[3] Plaintiff filed a request for review of the hearing decision. TR 5-6. On July 9, 2010, the Appeals Council issued a letter declining to review the case (TR 2-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

_____

[3] Plaintiff's request for review of the hearing decision is dated 3 days *before* the ALJ's decision was issued. Defendant does not appear to take issue with this fact; accordingly, neither will the undersigned.

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which

significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific

---

[4] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) improperly rejecting the opinion of treating physician, Dr. P. K. Jain; 2) failing to determine that Plaintiff meets or medically equals Listing 12.04;[5] and 3) improperly determining that Plaintiff had the mental ability to return to his past relevant work.  Docket No. 15.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

---

[5] Plaintiff, in his Statement of Errors, argues that he met the requirements for Listing 12.04.  Docket No. 15.  At the end of that argument, however, Plaintiff references Listing 12.03 for the first time, without explanation.  Because Plaintiff does not make any argument regarding Listing 12.03, the undersigned will analyze only Plaintiff's argument concerning Listing 12.04.

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1.  Weight Accorded to Treating Physician's Opinion**

Plaintiff maintains that the ALJ failed to provide good reasons for rejecting the opinion of Dr. Jain, his treating physician.  Docket No. 15.  Plaintiff contends that Dr. Jain's opinion should have been accorded controlling weight, and further contends that Mr. Herman's findings support Dr. Jain's assessment.  *Id.*  Plaintiff additionally argues that the ALJ's accordation of great weight to the opinions of State agency psychological consultants, Drs. Karen B. Lawrence and Cathryn G. Yarbrough, was erroneous because they did not have an opportunity to review Dr. Jain's opinion, and therefore, did not have access to Plaintiff's entire medical record.  *Id.*

Defendant responds that the ALJ properly discounted Dr. Jain's opinion.  Docket No. 18.  Defendant argues that the ALJ appropriately explained her rationale for discounting Dr. Jain's opinion, and further argues that those reasons were supported by the record.  *Id.*  Defendant contends that the "reasons that the ALJ gave for discounting Dr. Jain's opinion reflect that the ALJ engaged in exactly the right type of inquiry in determining whether to credit an opinion." *Id.*  Defendant additionally asserts that the opinions of Drs. Lawrence and Yarbrough further support the ALJ's conclusions, and that the ALJ properly evaluated the medical and testimonial evidence of record.  *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Jain is Plaintiff's primary care physician, a fact that would justify the ALJ's giving

greater weight to his opinion than to other opinions, as long as Dr. Jain's opinion was consistent

with, and supported by, the evidence of record. As will be discussed below, however, Dr. Jain's

opinion contradicts other substantial evidence in the record.

On October 14, 2008, Dr. Jain completed a mental impairment questionnaire assessing

Plaintiff's limitations. TR 179-82. The ALJ analyzed this report and explained:

> In October 2008, Dr. Jain, the claimant's primary care physician,
> completed a medical source questionnaire and reported diagnoses
> of bipolar disorder; anxiety state/panic attacks; and obsessive
> compulsive disorder with symptoms which would meet the criteria
> of a listed impairment. Dr. Jain related seeing the claimant only
> once every six months during the past two years, and once in April
> of 2002. Dr. Jain noted that the claimant became fatigued with
> minimal physical labor, which at times caused him to have
> sweating, dizziness and confusion. This report appears to be based
> on the claimant's self-reported symptoms and not objective
> medical findings. As discussed elsewhere in this decision, the
> claimant is not found to be fully credible in his allegations.
> Additionally, this opinion is simply unsupported by and
> inconsistent with the overall evidence of record, including the
> treatment notes, prescribed medications, and the claimant's self-
> reported activities. Thus, no weight is given to this opinion.

TR 16-17 (internal citation notations omitted), *citing* TR 179-82.

As can be seen, the ALJ explained her rationale and articulated specific discrepancies

between Dr. Jain's opinion and the record as a whole. The ALJ is not required to give

controlling weight to a treating physician's evaluation when that evaluation is inconsistent with

other substantial evidence in the record.  *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2).  Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above.  *Id.*

With regard to Plaintiff's assertion that Mr. Herman's opinion supports that of Dr. Jain, Plaintiff is correct that *parts* of Mr. Herman's opinion are in line with *parts* of Dr. Jain's opinion. The ALJ in the case at bar considered Mr. Herman's opinion and accorded great weight to the parts of Mr. Herman's opinion that were consistent with the evidence of record, while discounting the parts of Mr. Herman's opinion that were unsupported by the record.  TR 17. Specifically, the ALJ explained:

> When Jeffrey Scott Herman, SPE, performed a consultative psychological evaluation of the claimant in May 2008, the claimant spontaneously reported that he had not looked for work since the factory that he was working at closed six to seven years prior to the date of the exam, and indicated that his failure to look for work since that time was due to his having hepatitis.  The claimant related that he had been off prescribed psychotropic medications "for a time" and had been back on the medications for three months.  He stated that Dr. Jain had diagnosed bipolar disorder and obsessive-compulsive disorder three months prior to the exam.  Mr. Herman determined that the claimant's anxiety would interfere with his adaptive functioning, and that this may limit his ability to work in the presence of others; that the presence of others may cause the claimant to be so anxious that he could not sustain persistence; that he was likely to fail to set goals for himself; and that he appeared to depend excessively on his parents. No weight is given to this portion of Mr. Herman's opinion, as it is inconsistent with the overall evidence of record, including the claimant's ability to complete all phases of the examination, including the [MMPI-II] testing.  Great weight, however, is given to [Mr. Herman's] statement that [Plaintiff] was clearly capable of understanding and remembering instructions of a simple or detailed nature; that his memory and comprehension were unimpaired; and that he had no cognitive limitations, as this portion of his opinion is consistent with the mental status test results, as well as with claimant's reported activities of daily

living.

TR 17 (internal citation notations omitted), *citing* TR 217-25.

      The portions of Mr. Herman's opinion to which the ALJ accorded great weight as being consistent with the record are also consistent with the findings of Drs. Lawrence and Yarbrough. As the ALJ stated:

> In May 2006, Dr. Yarbrough, a State agency psychological consultant, reviewed the claimant's records opined that the claimant could: understand and recall simple and detailed tasks; concentrate on and persist with simple and low level detailed tasks; relate with the general public, supervisors and co-workers; adapt to infrequent changes; be aware of hazards, travel independently, and set goals.
>
> Dr. Lawrence, a State agency psychological consultant, reviewed the claimant's records in June 2008, and opined that the claimant could: understand, remember and carry out simple one and two step, detailed, but not complex instructions; would have difficulty, but still could attend to and persist with simple repetitive tasks; would have difficulty, but could relate adequately to the general public; and set short term goals.
>
> The opinions of Dr Yarbrough and Dr. Lawrence are essentially in agreement. Each of these opinions is given great weight, as they are well supported by and consistent with the overall evidence of record, including examination findings, diagnoses, treatment and prescribed medications.

TR 17 (internal citation notations omitted), *citing* TR 191-93, 300-02.

      Regarding Plaintiff's assertion that neither Dr. Lawrence, nor Dr. Yarbrough reviewed Dr. Jain's assessment and therefore did not have Plaintiff's entire medical record to review, both doctors' reports predate Dr. Jain's October 2008 report. Accordingly, Dr. Jain's October 2008 opinion had not been rendered prior to the rendering of the opinions of Drs. Lawrence and Yarbrough. This fact does not render the ALJ's ultimate determination invalid, however,

because the ALJ discussed the entirety of the medical and testimonial evidence of record, and based her decision on all the evidence, not simply on the opinions of Drs. Lawrence and Yarbrough.

The ALJ evaluated the evidence as a whole, reached a reasoned decision, and articulated the basis for that decision. The Regulations do not mandate that the ALJ accord Dr. Jain's evaluation controlling weight in light of the inconsistencies with the evidence detailed above. Accordingly, Plaintiff's argument fails.

**2. Meeting or Equaling Listing 12.04**

Plaintiff contends that he meets the requirements of Listing 12.04, Affective Disorders. Docket No. 15. Specifically, Plaintiff contends that the findings of Dr. Jain and Mr. Herman corroborate the severity of his disability. *Id.* Plaintiff also argues that he meets Listing 12.04 because, *inter alia*: (1) Dr. Jain diagnosed him with bipolar disorder, anxiety state with panic attacks, hepatitis C, and obsessive-compulsive disorder; (2) the side effects of his medication include dizziness, fatigue, and sweating; (3) he becomes hot, dizzy, and confused when he tries to work; (4) he has paranoid thoughts and feels anxious and depressed, and has had suicidal ideation in the past; (5) he has decreased energy, mood disturbance, blunt, flat, and/or inappropriate affect, feelings of guilt and/or worthlessness, manic syndrome, apprehensive expectation, sleep disturbance, paranoid thinking, and inappropriate suspiciousness; and (6) the results of his Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-II) testing indicated that he suffered from anxiety sufficiently severe to interfere with his ability to function. *Id.*

Defendant responds that ALJ's determination that Plaintiff did not meet the requirements

13

for any listing was appropriate, because the evidence of record does not demonstrate that Plaintiff suffered from impairments of a listing-level severity. Docket No. 18. Specifically, Defendant argues that Plaintiff neither showed evidence of his alleged listing-level severe limitations nor detailed how his claimed impairments met or medically equaled the severe limitation requirements of Listing 12.04. *Id.*

As an initial matter, an ALJ must evaluate the combined effect of a claimant's impairments. 42 U.S.C. § 423(d)(2)(B). Plaintiff, however, fails to show that the ALJ in the case at bar did not do so. Instead, Plaintiff simply maintains that the ALJ's determination that he did not meet the requirements of Listing 12.04 was not supported by substantial evidence. Docket No. 15.

With regards to Listing 12.04, "Affective disorders," the Code of Federal Regulations states in relevant part:

> 12.04 *Affective disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > . . .
> >
> > 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> B. Resulting in at least two of the following:

14

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 CFR pt. 404, subpt. P, app.1 12.04.

As Plaintiff correctly notes, the mere presence of a mental impairment is not sufficient to meet the requirements of Listing 12.04.  *See id.*   In order to meet or equal Listing 12.04, Plaintiff must establish that he satisfies both the A *and* B criteria, *or* the C criteria.  *Id.* Regarding the "paragraph B" criteria of Listing 12.04, the ALJ stated:

To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes

within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. At the hearing, the claimant testified that he was able to attend to his personal grooming needs; feed the family pets, a dog and a cat; perform chores that his mother asked him to do; do activities on the computer; help his father do chores in his automobile business; do some yard work, such as raking leaves and picking up trash; read; play video games; watch television; visit with family or friends; talk on the phone; shop; and write checks to pay bills.

In social functioning, the claimant has mild difficulties. A Social Security employee noted that during an interview performed in August 2006, the claimant was well-groomed, cooperative and pleasant to deal with. The claimant indicated that he had never been fired or laid off from a job due to problems getting along with other people. Although the claimant alleged during his hearing testimony that he did not like to be around a lot of other people, he said that he had attended a NASCAR race about four years ago; and reported in questionnaires that he went to local car shows about twice a year and that he grocery shopped about once a week.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. Nevertheless, a consultant psychologist reported that the claimant was able to sustain concentration and persistence during the assessment and was able to persist well enough to complete all of the test procedures during the examination in May 2008.

As for periods of decompensation, there is no indication in the record that the claimant has experienced any episodes of any decompensation.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

TR 13-14 (internal citation notations omitted), *citing* 86-93, 117-19, 217-25, 390-403.

As can been seen, the ALJ clearly articulated her rationale for determining that Plaintiff

did not meet the "paragraph B" criteria, and her determination is supported by the evidence of

record.  Additionally, Plaintiff's hearing testimony and questionnaire responses support the

ALJ's determination regarding his daily activities and social functioning.

With regard to whether Plaintiff met the "paragraph C" criteria, the ALJ made the

following determination:

> In this case, the evidence fails to establish the presence of the
> "paragraph C" criteria.  The evidence does not indicate that the
> claimant has ever had any episodes of decompensation of extended
> duration; or that he has a residual disease process that has resulted
> in such marginal adjustment that even a minimal increase in
> minimal demands or change in the environment would be
> predicted to cause him to decompensate.  In addition, the record
> shows that the claimant functions adequately outside of a highly
> supportive setting; thus, the "paragraph C" criteria are not met.

TR 14.

After evaluating all of the medical, vocational, and testimonial evidence, the ALJ

determined that Plaintiff did not have an impairment or combination of impairments that met or

equaled a listing.  TR 13-14.  The rationale in the ALJ's decision specifically addresses the

evidence of record and indicates that the ALJ properly considered Plaintiff's impairments.  *Id.*

Contrary to Plaintiff's assertion that the ALJ's determination that Plaintiff did not meet or

medically a listing was not supported by substantial evidence, it is clear from the ALJ's detailed

articulated rationale that numerous findings from the record as a whole support her evaluation of

the combined effect of Plaintiff's impairments.

Although Plaintiff also contends that he meets the Listing 12.04 requirements because

Dr. Jain so found, and because Mr. Herman's opinion so supports, as discussed above, the ALJ

properly evaluated their opinions.  Moreover, the Sixth Circuit has consistently held that the

Commissioner is not bound by a treating physician's conclusory statement that a claimant meets

a listed impairment. *Duncan v. Secretary*, 801 F.2d 847, 855 (6th Cir. 1986). As such, the ALJ was not bound to find that Plaintiff met Listing 12,04 simply because Dr. Jain so found, and Plaintiff's reliance on Dr. Jain's determination that he met the requirements of Listing 12.04 is misplaced.

Because substantial evidence supports the ALJ's determination that Plaintiff did not meet the "paragraph B" or "paragraph C" criteria of Listing 12.04, the ALJ's determination must stand.

### 3. Residual Functional Capacity

Plaintiff maintains that the ALJ's determination the he has the residual functional capacity to return to his past relevant work in not supported by substantial evidence. Docket No. 15. Specifically, Plaintiff contends that his activities, including occasional work in his father's automobile business, do not equate to an ability to work on a "regular and continuing basis" as the Regulations require. *Id.* Plaintiff argues that he has problems with weakness, sweating, and fatigue when working. *Id.*, *citing*, TR 395. Further, Plaintiff contends that Dr. Jain and Mr. Herman's reports corroborate this testimony and indicate that he lacks the mental capacity to work. *Id.*

Defendant responds that the ALJ properly determined Plaintiff's residual functional capacity. Docket No. 18. Defendant notes that Plaintiff's arguments on this point are merely restatements of his prior assertions that Dr. Jain and Mr. Herman's opinions evidence the fact that Plaintiff cannot work on a full time, continued, and sustained basis. *Id.* Additionally, Defendant maintains that the record supports the ALJ's determination that Plaintiff's statements regarding his limited ability to do regular work are "less than fully credible." *Id.*, *citing* TR 18.

18

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

Plaintiff correctly states that a claimant's sporadic daily activities may not truly indicate what a claimant can do on a sustained basis. *See Cohen v. Secretary*, 964 F.2d 524 (6th Cir. 1992). In the case at bar, however, substantial evidence suggests that Plaintiff's activities are more than sporadic. The ALJ explained:

> Although there are no earnings reported after the date that the claimant alleged becoming disabled, and the claimant denied having worked after that date, there are numerous references in the record which indicate that the claimant reported that he had a full-time job working in the family business. Notably, when the claimant saw a physician in November 2004 due to having bruises sustained in a fight, the claimant stated that he needed a statement confirming that he had been seen by a physician, and the record noted that he had been given a note to excuse him from time missed at work for that day. Case notes from the methadone clinic repeatedly noted that the claimant was working full-time in the family business. When the claimant underwent a yearly psycho-social update with his methadone clinic in June 2005, his current employment status was noted to be full-time and his current occupation was noted as "auto repair." In August 2006, his counselor indicated that the claimant reported that "he works daily

with his dad on car repairs" and in the category of "Employment: full time job noted." The undersigned observed that the claimant appeared to be muscular and healthy looking during the hearing, which indicates that the claimant is engaging in much more physical activity than he has admitted to herein.

In sum, the above residual functional capacity assessment is supported by the objective evidence of record. Treatment notes indicate that the claimant has not experienced any [of] the type of physical symptoms one would expect to see if this were a truly a [*sic*] disabling impairment, as the claimant alleged. For instance, he has not been noted to have experienced any significant weight loss attributable to abdominal pain, nausea, or vomiting, nor has he been noted to have reported such symptoms. He has not undergone any treatment for hepatitis C, nor has he undergone a liver biopsy. The medical records and by the claimant's own account [*sic*], he has not experienced any seizures since mid-2001, despite not taking any anti-seizure medication. He has not sought or been referred for any formal mental health treatment, which indicates that his symptoms are controlled by the psychotropic medications that his primary care physician has prescribed to him. The residual functional capacity has been derived by the assessments of State agency psychological and medical consultants, whose opinions are well-supported by and consistent with the objective evidence of record.

TR 18 (internal citation notations omitted), *citing* TR 263, 274.

As the above indicates, the record in the case at bar is replete with doctors' evaluations, medical assessments, and lifestyle questionnaires, all of which were properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ, after evaluating all of the medical and testimonial evidence, and as well as Plaintiff's reported level of activity, determined that Plaintiff retained the Residual Functional Capacity to perform "past relevant work as a laborer and a machine operator, car parts manufacturer." TR 18. The ALJ properly evaluated the evidence in reaching this Residual

Functional Capacity determination, and the Regulations do not require more. Because there is substantial evidence in the record to support the ALJ's Residual Functional Capacity determination, the ALJ's determination must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge